IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00968-GPG-STV

EZAMIKA BROWN,

    Plaintiff,

v.

MARQUEZ, SERGEANT,
JUAREZ, CORRECTIONAL OFFICER,
MARK FAIRBAIRN, WARDEN,
LORENZO TOBIN, CAPTAIN,
LINDSAY GOUTY, HEALTH SERVICE ADMINISTRATOR,
NURSE LISA,
NURSE RAMONA,

    Defendants.

---

**THE CDOC DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF NO. 1)**

---

Defendants Moraima Marquez, Mark Fairbairn, Lindsay Gouty, and Lorenzo Tobin (collectively, "CDOC Defendants")[1], through the Colorado Attorney General,

---

[1] CDOC Defendants note that although the issue does not appear to have been addressed by the Tenth Circuit, the overwhelming weight of cases—including from the District of Colorado—hold that where a defendant moves to dismiss some (but not all) of the claims against it, it need not answer the remaining claims until the partial motion to dismiss has been resolved. *See Bd. of Cty. Comm'rs Cty. of La Plata, Colo. v. Brown Grp. Retail, Inc.*, No. 08-CV-00855-LTB-KMT, 2008 WL 4527736, at *1 (D. Colo. Oct. 3, 2008) (collecting cases from other districts); *see also Talbot v. Sentinel Ins. Co.*, No. 2:11-cv-01766-KJD-CWH, 2012 WL 1068763, at *4 (D. Nev. Mar. 29, 2012) (collecting cases holding the same). However, in an abundance of caution, if the Court disagrees with the foregoing authorities, the CDOC Defendants move in the alternative under Rule 6(b)(1)(A) for an extension of time to submit an answer or other responsive pleading to the Amended Complaint of up to and including fourteen days after the date on which it

1

hereby move for partial dismissal of the Complaint in this action.[2] *See generally* Complaint, ECF No. 1. In support of this Motion, the CDOC Defendants state the following:

## PRELIMINARY STATEMENT

Plaintiff Ezamika Brown is an inmate who at all times relevant to this action has been incarcerated at Arkansas Valley Correctional Facility (AVCF). *See generally,* Complaint – ECF No. 1.[3] He brings this action under 42 U.S.C. § 1983 against multiple CDOC employees, asserting several claims of excessive force, deliberate indifference to medical needs, and failure to train, supervise, and/or investigate in violation of the Eighth Amendment.

Claim One of Brown's Complaint appears to encompass both a claim for deliberate indifference to medical needs and a claim for excessive force. According to Claim One, Brown had two surgical procedures in June 2023: a heart ablation and the placement of an implantable cardioverter defibrillator (ICD). Complaint, ECF No. 1 at p. 5. On August 11, 2023, Brown received an automatic shock from the ICD to correct an abnormal heart rhythm and felt ill afterwards. *Id.* He went to the medication distribution

---

resolves this motion.

[2] While Defendants Lisa Hanks and Jeremiah Juarez are also represented by undersigned counsel, they are not moving to dismiss the claims raised against them at this time.

[3] All allegations herein are adopted from Brown's complaint and are recited solely for purposes of providing a narrative for the instant Motion. The CDOC Defendants' use of these allegations in this Motion should not be construed as admissions thereto.

line ("med line") to obtain his daily heart medications. *Id.* At this point he informed defendant Lisa Hanks that he felt dizzy, was short of breath, and had chest pains as a result of the ICD shocking him. *Id.* Rather than being given immediate medical attention, Hanks and a Jane Doe nurse told Brown to return to his housing unit to declare a medical emergency if he believed he was ill enough to require such attention. *Id.* Brown tried to explain to Hanks and Officer Juarez that he had been shocked by his ICD, but they told him to go back to his cell. *Id.* When Brown refused to return to his housing unit and/or cell because he felt too ill to walk back, Sgt. Marquez told him he had to go back to his cell or he would be placed in restrictive housing (RH). *Id.*

Because Brown continued to refuse to return to his housing unit, Sgt. Marquez placed him on the ground and handcuffed him. *Id.* He subsequently lost consciousness while staff "dragged" him to RH. *Id.* at p. 6. Upon arriving at RH, Captain Tobin ordered Marquez to remove the handcuffs from Brown. *Id.* Sgt. Marquez pulled at Brown's wrist and "cranked" the handcuffs. *Id.* Brown was then taken to the prison medical clinic where he was given an EKG. *Id.* He was eventually transported to a hospital as a result of his cardiac symptoms and remained hospitalized for four days. *Id.*

Brown alleges in Claim Two that Defendant Fairbairn (the Warden at AVCF) and Capt. Tobin failed to train and/or supervise other AVCF staff and/or implemented unconstitutional policies and procedures. *Id.* at p. 7. Warden Fairbairn and Capt. Tobin were responsible for creating and/or implementing policies and procedures at AVCF pertaining to the use of force and, in particular, those governing when it is appropriate to use handcuffs on an inmate. *Id.* Brown argues that according to "official DOC policy,"

handcuffs are not to be used on compliant inmates. *Id.* Despite this, Officer Juarez and Sgt. Marquez used handcuffs on Brown, who maintains that he was being compliant. *Id.* Brown states that the handcuffs were applied in contravention of CDOC policy because Warden Fairbairn and Captain Tobin failed to adequately train and/or supervise Officer Juarez and Sgt. Marquez. *Id.* Warden Fairbairn and Capt. Tobin were also "personally aware" that Sgt. Marquez had harassed and threatened Brown *after* Marquez's use of the handcuffs. *Id.* at p. 8.

Brown contends in Claim Three of his Complaint that Defendant Gouty failed to train and/or supervise medical staff who treated Brown, which in this case include Hanks and a Jane Doe nurse. *Id.* at p. 9. According to Brown, it is CDOC policy that "acute cardiac disease is the greatest single, potentially correctable, cause of death within the department's population and therefore, patients *must* [emphasis added] be carefully screened to prevent missing a diagnosis." *Id.* Brown maintains that Gouty failed to train Hanks as to this policy, though it is unclear exactly *how* Brown came to believe that this is the case. *Id.*

Finally, Brown asserts in Claim Four that Hanks acted with deliberate indifference to his serious medical needs. *Id.* at 10. Specifically, Hanks was aware of Brown's heart condition and "almost certainly knew he had sustained chest pains and a defibrillation shock", but still refused to immediately treat him at the med line, and opted instead to order him to go back to his cell to declare a medical emergency. *Id.*

He seeks compensatory and punitive damages and "appropriate declaratory relief," as well as damages for economic and non-economic loss. *Id.* at p. 13.

4

The CDOC Defendants move for partial dismissal of Brown's Complaint. Specifically, Sgt. Marquez seeks dismissal of the excessive force cause of action raised against her in Claim One because Brown cannot meet either the objective or subjective component of a such a claim. Warden Fairbairn, Capt. Tobin, and Gouty each seek dismissal of the failure to train and failure to investigate and/or discipline claims raised against them in Claims Two and Three. Finally, the CDOC Defendants contend that they are entitled to qualified immunity to the extent Brown seeks monetary damages.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires more than mere conceivability. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). Put simply, a plaintiff "must include enough facts to 'nudge[ ] [his] claims across the line from conceivable to plausible.'" *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (*quoting Twombly*, 550 U.S. at 570).

While detailed factual allegations are not required, a plaintiff must assert "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint will not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement" or "[t]hreadbare recitals of the

5

elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555, 557).

## ARGUMENT

I. **Brown has not alleged that the force used with regard to his handcuffing was sufficient to give rise to an Eighth Amendment violation.**

Brown's Eighth Amendment excessive force claim is outlined in Claim One of his Complaint. *See* Complaint, ECF No. 1 at pp. 4-6. He makes clear that he brings the excessive force claim solely against Sgt. Marquez and is limited to her alleged misuse of handcuffs. *Id.* at 4. Brown has not sufficiently alleged excessive force against Sgt. Marquez because of the unique facts and circumstances giving rise to the alleged handcuffing, and because his description of the handcuffing is exceedingly vague and conclusory.

In the Eighth Amendment context, "an excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Marshall v. Milyard*, 415 F. App'x 850, 852 (10th Cir. 2011) (quoting *Smith v. Cochran,* 339 F.3d 1205, 1212 (10th Cir. 2003)). The objective component is "contextual and responsive to contemporary standards of decency." *Smith*, 339 F.3d at 1212 (internal quotations and citations omitted). The subjective component "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* However, the

6

"core judicial inquiry" is the latter because "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 7–9 (1992).

The court's Eighth Amendment analysis must take into consideration the highly charged prison environment. *See Sampley v. Ruettgers*, 704 F.2d 491, 496 (10th Cir. 1983) (recognizing that in maintaining control of inmates, a prison guard often is called upon to "make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself"). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted); *see also DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (a "simple act of shoving [plaintiff] qualifies as the kind of de minimis use of force that does not constitute cruel and unusual punishment" and "fall[s] short of what is required to state a claim for excessive force under the Eighth Amendment"); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).

"While all prisoners are entitled to Eighth Amendment protections against excessive use of force, inmates do not have a right to call the shots when it relates [to] obedience to lawful commands from the officers." *Provencio v. Vazquez*, No. 1:07-cv-00069-AWI-JLT, 2010 WL 2490949, at *5 (E.D. Cal. Jun. 16, 2010), *rec. adopted,* 2010 WL 2854277 (Jul. 21, 2010) (while Eighth Amendment protects inmates from the use of force that is sadistic and malicious, "it does not mandate that prison officials...wait until an inmate deigns to comply with orders"); *United States v. Jennings*, 855 F. Supp. 1427, 1436 (M.D. Pa. 1994), *aff'd,* 61 F.3d 897 (3d Cir. 1995) (noting that the plaintiff inmate

7

"was required to obey the lawful directions of the corrections officers, including the order to cuff up" and rejecting the notion that a prisoner is justified in refusing to obey commands based solely upon his or subjective belief).

Brown's allegation that Sgt. Marquez allegedly "cranked" the handcuffs as she was taking them off of Brown's wrists is not objectively serious enough to violate the Eighth Amendment. Brown provides no details about this action except that the handcuffs were "cranked," that he experienced significant pain, and that he believed – without any factual allegations to suggest his belief amounts to more than speculation – that Sgt. Marquez cranked the handcuffs for the express purpose of inflicting pain. Complaint, ECF No. 1 at p. 6. Even when viewed in the context of the alleged events giving rise to the removal of the handcuffs, it is not at all clear what Brown means when he claims that Sgt. Marquez "cranked" the handcuffs. Cranking handcuffs could simply refer to the sound of handcuffs as they are being removed or otherwise maneuvered in an entirely benign manner. While it could *conceivably* entail some sort of maneuvering of the handcuffs that is severe enough to violate the Eighth Amendment, the allegation is so vague that it is not *plausible* that this is so. With only the vague use of the word "cranked" to rely upon, Sgt. Marquez would only be able to guess as to what exactly it was about the alleged removal of the handcuffs that Brown believes would satisfy the objective prong. This is insufficient to proceed with his Eighth Amendment claim. *See Dennis v. Watco Cos., Inc.,* 631 F.3d at 1305 (finding that a plaintiff's complaint "must include enough facts to 'nudge[ ] [his] claims across the line from conceivable to plausible.'").

8

While Brown's inability to meet the objective prong alone necessitates dismissal of his excessive force claim, he similarly has not satisfied the subjective prong. First, Brown readily admits he did not follow staff orders to return to his cell in order to declare a medical emergency and was repeatedly warned that he would be taken to Restrictive Housing if he did not comply. Complaint, ECF no. 1 at pp. 4-5. Thus, the alleged placement and ultimate removal of the handcuffs by Sgt. Marquez must be viewed in its proper context; that is, that the handcuffs were used on a prison inmate who steadfastly refused to comply with an officer's order. This is consistent with case law holding that a corrections officer need not wait for an inmate to comply with an order before applying force. *See Jennings*, 855 F. Supp. at 1436; *Provencio*, 2010 WL 2490949, at *5.

Moreover, the allegations regarding the subjective prong are exceedingly threadbare. Brown claims that Sgt. Marquez cranked the handcuffs while removing them in order to intentionally inflict pain, but does not include any factual allegations supporting this belief. *See* Complaint, ECF No. 1 at pp. 4-6. By failing to include such allegations and relying solely on the conclusion that Sgt. Marquez simply must have acted maliciously when removing the handcuffs, Brown is effectively reciting the subjective prong of an excessive force claim rather than explaining exactly *how* Sgt. Marquez's actions satisfy it. This is not enough to proceed with a federal cause of action. *Iqbal*, 556 U.S. at 678.

For these reasons, Brown's excessive force claim against Sgt. Marquez should be dismissed for failure to state a claim upon which relief can be granted.

**II.     Brown's failure to train and failure to investigate and/or discipline claims against Defendants Fairbairn, Tobin, and Gouty should be dismissed because he has failed to plead facts sufficient to warrant such relief.**

Brown contends in Claims Two and Three that Warden Fairbairn, Capt. Tobin, and Gouty failed to train, supervise, and investigate and/or discipline the remaining Defendants in the case, and that they promulgated constitutionally deficient policies and procedures. Complaint, ECF No. 1 at pp. 7-10. For the reasons that follow, Brown's claims against Warden Fairbairn, Capt. Tobin, and Gouty for failure to train and to investigate and/or discipline should be dismissed.[4]

**A.     Brown has failed to allege a failure to train claim because he has not identified a deficient training program.**

"Under a failure to train claim, a plaintiff must ordinarily show a defendant had 'actual or constructive notice that a particular omission in [a training] program cause[d officials] to violate citizens' constitutional rights' and nonetheless 'made a conscious choice to retain [the] deficient training program.'" *Hurst v. Madera*, No. 16-CV-01914-KMT, 2018 WL 684769, at *5 (D. Colo. Feb. 2, 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Absent a pattern of preexisting constitutional violations – which Brown does not allege – a § 1983 failure to train claim can only proceed "in a narrow range of circumstances, [where] a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle

---

[4] The CDOC Defendants do not seek to dismiss Claims Two and Three to the extent Brown raises failure to supervise and/or seeks to hold any defendant liable for promulgating constitutionally deficient policies.

recurring situations." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997).

Here, there are no allegations that Warden Fairbairn, Capt. Tobin, and Gouty were actually or constructively aware of deficiencies in a *training program* that caused any other CDOC official to violate Brown's rights but then made the *conscious choice* to retain that program. There is no description of anything resembling a training program and, therefore, necessarily no choice to retain it.

**B. Brown's failure to investigate and/or discipline claims should be dismissed because Defendants Fairbairn, Tobin, and Gouty cannot be held liable for other Defendants' alleged constitutional violations merely because they did not address it after the fact.**

Where, as in this case, a plaintiff alleges only that a supervisor failed to investigate or discipline a subordinate *after* the particular purported constitutional violations in question, the Tenth Circuit has noted that "basic principles of linear time prevent us from seeing how conduct that occurs after the alleged violation could have somehow caused that violation." *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009); *accord Estate of Lobato by & through Montoya v. Correct Care Sols., LLC*, No. 15-CV-02718-PAB-STV, 2017 WL 1197295, at *9 (D. Colo. Mar. 31, 2017); *McAllister v. Kellogg*, No. 13-CV-2896-CMA-MJW, 2015 WL 2329425, at *10 (D. Colo. May 14, 2015).

Here, Brown alleges that Warden Fairbairn and Capt. Tobin knew that Defendant Marquez had harassed and threatened Brown in the months *following* Sgt. Marquez's "constitutional violation" but failed to investigate or discipline her (or, for that matter,

11

Juarez) for the purported violation, harassment, and threats.[5] Complaint, ECF No. 1 at p. 8. It appears that Brown is referring to Fairbairn and Tobin's failure to do so solely in relation to the alleged misconduct described in the Complaint. Therefore, the Tenth Circuit's prior observation holds. A plaintiff asserting a failure to discipline § 1983 claim must show a "direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006). Any failure to investigate or discipline a subordinate that necessarily would have occurred after the constitutional violation in question could not have caused that violation in the first place. *See Cordova*, 569 F.3d at 1194. As such, Brown also has failed to plead facts to allow his supervisor liability claim against Defendants Fairbairn and Tobin to proceed under a failure to investigate/failure to discipline theory.

Finally, although Claim Three purportedly identifies a cause of action brought against Gouty for failure to investigate, there are no allegations in support of any such claim. *See* Complaint, ECF No. 1, at p. 9. It should therefore be dismissed.

### III.     The CDOC Defendants are entitled to qualified immunity.

To promote the efficient administration of public services, the doctrine of qualified immunity "shields government officials performing discretionary functions from individual

---

[5] Brown alleges that Warden Fairbairn and Tobin knew about Sgt. Marquez's history of threats and harassment. Complaint, ECF no. 1 at p. 8. However, Brown does not explain how Fairbairn and Tobin's purported failure to investigate these highly vague and generalized threats and harassment would give rise to a constitutional violation when (1) the exact nature of the harassment and threats is unclear; and (2) harassment and threats are not *per se* constitutional violations and are not necessarily logical precursors to such violations.

liability under § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (internal citations omitted). Qualified immunity is an affirmative defense to a lawsuit brought under § 1983. *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995).

When a defendant asserts qualified immunity, the plaintiff bears a heavy two-part burden of proof. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004)*; DeSpain*, 264 F.3d at 971. Specifically, the plaintiff must show that: (1) the defendant violated the plaintiff's federal constitutional or statutory rights, *and* (2) the right was clearly established at the time of the violation in the circumstances faced by the defendant. *Reynolds*, 370 F.3d at 1030. If a plaintiff fails to demonstrate either of these two parts, the court must grant a defendant qualified immunity. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

As explained in argument points I and II above, Brown fails to plead sufficient facts demonstrating that the CDOC Defendants violated his federal constitutional rights. Because Brown has failed to allege facts sufficient to state violations of his constitutional rights as to these Defendants, he *necessarily* has failed to allege facts sufficient to establish the violation of clearly established rights. *See Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018) ("It is true that if the plaintiff failed to state a claim under Rule 12(b)(6), the government would also be entitled to qualified immunity."). Therefore, the CDOC Defendants respectfully request dismissal of all claims identified under argument points I through II above, pursuant to the doctrine of qualified immunity.

## CONCLUSION

For the foregoing reasons, CDOC Defendants respectfully ask this Court for partial dismissal of Brown's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted on this 21st day of June, 2024,

PHILIP J. WEISER
Attorney General

*s/ Gregory R. Bueno*
GREGORY R. BUENO
Assistant Attorney General
Civil Litigation & Employment Section
*Attorneys for Defendants*
1300 Broadway, 10th Floor
Denver, CO  80203
Telephone: (720) 508-6000
Fax: (720) 508-6032
Email: gregory.bueno@coag.gov
*Counsel of Record

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within **MOTION TO DISMISS** herein by E-Filing with the CM/ECF system maintained by the court on June 21, 2024, by depositing copies of same in the United States mail, first-class postage prepaid, at Denver, Colorado, on June 24, 2024 addressed as follows:

Ezamika Brown #116759
Arkansas Valley Correctional Facility
12750 Highway 96 at Lane 13
Ordway, CO 81034
*Plaintiff, Pro Se*

*Courtesy copy e-mailed to client Representative:*
Anthony DeCesaro,
Associate Director of Legal Services, CDOC

  *s/ Elle Di Muro & Mariah Cruz-Nanio*