FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 18 2024

JEFFREY P. COLWELL
CLERK

ORIGINAL

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00968

Plaintiff,
Ezamika Brown, Plaintiff
v.

Marquez et al.

Defendant.

---

**Plaintiff's Response to the CDOC Defendant's Partial Motion to Dismiss**

---

The Plaintiff, Ezamika Brown, files this **RESPONSE** to CDOC Defendants Partial Motion to Dismiss, Pro se. See generally Complaint, ECF No. 29. Brown totally **DISAGREES** with their request for dismissal, in part or whole. In return, Mr. Brown seeks permission to proceed to **DISCOVERY** to prove his claims. In support of this Motion, the Plaintiff state the following:

## ARGUMENT

I.     **The CDOC Defendants claim Brown has not alleged that the force used with regard to his handcuffing was sufficient to give rise to an Eighth Amendment violation. Partial Motion to Dismiss, ECF No. 29 at pp. 6. Brown DISAGREES.**

In the Eighth Amendment context, "an excessive force claim involves two prongs: (1) an

objective prong that ask if the alleged wrongdoing was objectively harmful enough to establish a

constitutional violation, and (2) a subjective prong under which the plaintiff must show that the

official acted with a sufficiently culpable state of mind." The subjective component of an

excessive force claim looks at "whether force was applied in good faith effort to restore and

maintain discipline or maliciously and sadistically for the very purpose of causing harm."

*Marshall v. Milyard*, 415 F. App'x 850, 852 (10th Cir. 2011) (quoting *Smith v. Cochran*, 339 F.

3d 1205, 1212 (10th Cir. 2003)). It is important to remember that at the crux of this issue

(excessive use of force) that Mr. Brown was laying on his side after regaining consciousness with

his hands cuffed behind his back. Mr. Brown was not resisting nor was he in a position to be

non-compliant because he was disorientated after regaining consciousness. Capt. Tobin (the

officer who was in charge at the scene of the incident) directed Defendant Marquez to "take the

handcuffs off of Mr. Brown." Under Tobin's direction, Marquez then "forcefully pulled at Mr.

Brown's wrist." Complaint, ECF No. 1 at pp. 6. She used both of her hands to grab the handcuffs

around Mr. Brown's wrist and began to twist (crank) the metal handcuffs on the skin and bone of

Mr. Brown's wrist, causing the metal and the bone to deeply grind against each other; which

cause agonizing pain. Brown explains that the "cranking" of the handcuffs is the physically

grabbing of the handcuffs and pulling them in an upward motion, which causes the metal

handcuffs to deeply grind into/against the skin and the bone of the wrist. This continued for a

prolonged unnecessary amount of time (possibly minutes). Mr. Brown can be seen on

bodycam/security video crying out in pain. At no point during Marquez's use of force did she (or

any CDOC employee) stop this excessive force when Mr. Brown called out in pain. Nor was

Marquez directed to stop by any CDOC Defendant/employee present. No CDOC employee had

the decency to inquire why Mr. Brown is crying out in pain. The twisting (cranking) of the

handcuffs on Mr. Brown's wrist, which caused the metal handcuffs to grind against the skin and

bone of Mr. Brown's wrist, served no penological purpose. The manner and under the

circumstances (Mr. Brown having a clear and obvious medical emergency that even a lay person

would recognize the need for medical attention), and approximately for how long this abuse

continued speaks to the culpable mind state of Defendant Marquez. Any decent officer would

have stopped when Mr. Brown cried out in pain, not maliciously continue to inflict more pain

while Brown was having painful heart complications. "In the excessive force context, society's

expectations are different. When prison officials maliciously and sadistically use force to cause

harm, contemporary standards of decency are violated. This is true whether or not significant

injury is evident." Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S. Ct. 995, 117 L. Ed 2d 156

(1992). There was no penological purpose for Marquez to use the metal handcuffs as a weapon

on Mr. Brown's wrist by twisting (cranking) the metal handcuffs against his wrist, which caused

the metal handcuffs and Mr. Brown's wrist bone to grind together when Defendant Marquez

pulled the handcuffs upward motion on his wrist.

     For the reasons set forth, Brown's excessive force claim against Sgt. Marquez should

move forward to discovery.

**II.    The CDOC defendants contends that Brown's failure to train and failure to
investigate and/or discipline claims should be dismissed because he failed to
plead facts sufficient to warrant relief. Partial Motion to Dismiss, ECF No. 29
at pp. 10. Brown DISAGREES. (Brown will address his claims against Gouty
separately)**

Brown totally disagrees with the assertion by the CDOC defendants that he has not pled

sufficient facts to warrant relief to the claims of failure to train, supervise/investigate, and/or

failure to discipline. The driving force behind the constitutional violation that Brown suffered

was Warden Fairbain and Capt. Tobin's willful disregard to supervise, investigate, and discipline

Defendant Marquez, which amounted to deliberate indifference. It is well known at Arkansas

Valley Correctional Facility (AVCF) that Marquez is a "snap case" officer. Complaint, ECF No.

1 pp. 8. Despite this knowledge, Warden Fairbain and Capt. Tobin did nothing to protect inmates

and staff (co-workers) against Marquez's proclivity for uses of force and harassment. Marquez

has not been disciplined nor has there been any investigations after numerous grievances filed

against Marquez from inmates and staff. It was clear that Marquez needed to be retrained or at

least talked to in order to prevent her from going down the path of constitutional violating

misconduct. If the Warden Fairbairn and Capt. Tobin fulfilled their duties to

supervise/investigate it would have been foreseen that Marquez was a threat to the safety of the

inmate population, and Brown rights would not have been violated.

AVCF is a medical facility; meaning, unlike other facilities in CDOC, AVCF, house

inmates with sufficiently serious medical issues. Brown is currently unable to be housed at

facilities like Trinidad Correctional Facility (TCF), Delta Correctional Facility (DCF), etc.

because of the severity of his heart condition (ventricular tachycardia). These facilities do not

have the medical equipment, medical personnel, nor the properly trained staff to care for inmates

with sufficiently serious medical issues. Warden Fairbain and Capt. Tobin are aware that there is

inmates who have sufficiently serious (potentially life-threatening) medical issues in their care.

Despite this knowledge, Fairbain and Tobin task Marquez with unmonitored interaction with

inmates with serious medical issues. It is clear that Marquez's proclivity to use force would

eventually harm an inmate with sufficiently serious medical issue at AVCF. Correctional Officer

Mrs. Miller who is employed at AVCF and saw Brown in front of the med-line window on

August 11, 2023 expressed she "knew that it was going to be a bad situation for him (Brown),

because Sgt. Marquez was involved." Compliant, ECF No. 1 at pp. 8. If Mrs. Miller (Marquez's

co-worker) is aware that Marquez is a potential danger to inmates in their time of need of

medical care, then Warden Fairbairn and Captain Tobin should have been aware because every

grievance and confidential report goes directly to them. They made a conscious decision to

ignore all the complaints against Marquez.

Warden Fairbairn and Capt. Tobin's failure to supervise, discipline, and investigate

continues to put inmates and staff in danger due to Marquez allowed misconduct. Since Brown's

complaint has been filed Marquez has been "so out of control" and unsupervised/disciplined that

on June 13th, 2024 in the officer's roll call at AVCF she physically assaulted one of her co-

workers. This assault and the constitutional violation that Brown suffered is the result of Warden

Fairbairn and Capt. Tobin's continued failure to supervise, discipline, and/or investigate their

subordinates at AVCF.

The focus of the CDOC defendants in Argument II. B. of the Partial Motion to Dismiss,

ECF No. 29 at pp. 11, is they "cannot be held liable for other defendants' alleged constitutional

violations merely because they did not address it **after the fact.** But that is not Brown's argument

in the complaint, after the fact. Essentially, Brown's argument is Defendant Warden Fairbairn

and Capt. Tobin knew Marquez was a threat to the health and safety of the inmate population in

their care. Marquez had a proclivity to use force. They were put on notice by the numerous

grievances about her misconduct by inmates and staff (her co-workers). Defendant Warden Fairbairn and Capt. Tobin made a conscious choice to do nothing to prevent a highly predictable consequence, which resulted in deliberate indifference (failure to supervise, discipline, and investigate) to Brown's serious medical needs.

"Defendant Warden Fairbairn and Capt. Tobin had a duty to train and supervise the Correctional Officers and Medical Staff to ensure the safety and well-being of prisoners such as Plaintiff confined at AVCF." Complaint, ECF No.1 at pp. 7. They failed to discharge that duty. Their failures amount to a deliberate indifference claim.

For the reasons set forth, Brown's Failure to train, investigate, and discipline claim against Warden Fairbairn and Capt. Tobin should move forward to discovery.

**(CDOC Defendants contends that Brown's Failure to train and failure to investigate, and/or discipline claim should be dismissed against Gouty. Brown DISAGREES.)**

The driving force behind Brown's failure to train and failure to investigate and/or discipline claim was the implementation of Gouty's defective policy "regarding when it is appropriate to give medical attention to an inmate," and "when denying medical attention to a patient is appropriate." Compliant, ECF No. 1 at pp. 9. "It has been clearly established in the Tenth Circuit since at least 2006 that a deliberate indifference claim will arise when a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency." Self v. Crum, 439 F.3d 1227, 1232 (10th Cir. 2006). On August 11th, 2024 Brown made it clear he was having chest pain, was short of breath, and dizzy enough that he needed to sit before collapsing. Plaintiff also let the Defendants know that he was shocked by his ICD. The Defendants denied Brown medical care because of the policy that

requires "inmates to declare a medical emergency in the housing unit," that Gouty is the author

of. Ultimately, the Nurses refused Brown medical care even "knowing that medical protocol

requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to

his cell." See Self, 439 F.3d at 1227, 1232. It was Gouty's responsibility to ensure that her

subordinates fully understood the policies that she implemented. Gouty's failure to properly train

and failure to investigate is why Brown suffered the pain of preventable defibrillation shocks. It

was easily foreseeable that the policy that Gouty implemented could have been interpreted by the

Nurses (and Defendants) as "no matter the recognizable symptoms an inmate has to be sent them

back to the housing unit to declare a medical emergency." In Brown's instance it was almost

fatal.

　　　　Gouty was the policymaker and held the responsibility to properly train and supervise all

medical personnel at AVCF. She failed to discharge her duty in regards to the policy of when an

inmate can and cannot be denied medical care. Gouty's failure(s) were the driving force that

caused the constitutional violations that Brown suffered.

　　　　For all the reasons set forth, Brown's failure to properly train and supervise claim against

Gouty should move forward to discovery.

**Brown DISAGREES that the CDOC Defendants are entitled to Qualified Immunity.**

**A.**

　　　　The first prong that must be overcome to defeat a qualified immunity request requires the

plaintiff to show that the defendants violate his federal constitutional or statutory rights,

Reynolds, 370 F.3d at 1030. In reference to Argument I. of the CDOC Defendants Partial Motion

to Dismiss, ECF No. 29 at pp. 6-9. The Plaintiff in this Response Motion, carefully shows how

Marquez used the handcuffs as a weapon simply to inflict pain. There was no penological

purpose for Marquez's actions. If the incident is viewed in the proper context, when Marquez

was given the order by Capt. Tobin to "remove the cuffs," Marquez yanked on the handcuffs on

Brown's wrist with aggression. The yank is the start of the use of excessive force. No CDOC

employee showed concern when Brown cried out in pain. This attack only worsened by Marquez

upward pulling of the handcuffs on Brown's wrist.

The Defendants try to make the incident out to be a prisoner not complying with orders

issue, "inmates do not have a right to call the shots when it relates to obedience to lawful

commands from officers." Partial Motion to Dismiss, ECF 29 at pp. 5. But Brown was not being

disobedient to commands. At the time of Marquez's excessive use of force Brown had just

regained consciousness, was laying on his side, and had his hands cuffed behind his back. Brown

was still in need of life-saving medical care, he was not resisting as the Defendants try to have

the situation viewed as. Marquez's actions clearly violated Brown's constitutional right to be free

from cruel and unusual punishment, an Eighth Amendment violation. The Defendants only

argument in regards to qualified immunity is, "Brown fail to plead sufficient facts demonstrating

that the CDOC Defendants violated his federal constitutional rights." Partial Motion to Dismiss,

ECF29 at pp. 13. As explained above in argument points I and II, Brown reasserts that his

constitutional rights have been violated.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully ask this Court for permission to

further develop **ALL** claims asserted in Complaint, ECF No. 1 and be allowed proceed to

**DISCOVERY.**



8

## CERTIFICATE OF SERVICE

I certify that on ~~July 12th, 2024~~ the original was mailed to the Court for filing;

**PLAINTIFF'S RESPONSE MOTION** by placing it in the United States Mail, postage pre-

paid, and addressed to the following:

The Clerk of the Court
United States District Court of the District of Colorado
Alfred A. Arraj United States Courthouse
901 19th Street, Room A105
Denver, Co. 80294-3589

Ezamika Brown #116759
Arkansas Valley Correctional Facility
12750 Highway 96 at Lane 13
Ordway, Co. 81034
Plaintiff, Pro se

_____

_____

_____

US POSTAGE

quadient

FIRST-CLASS MAIL
MI
$002.04 ²
07/15/2024 ZIP 81034
043M32221666

Colorado Department of Corrections
Name EPHRAIM BROWN
Register # 116757
Unit 2A-311
Address 12750 St. HWY 96 at Lane 13
City/State/Zip Ordway, CO 81034

The Clerk of the Court
Alfred A. Arraj United States Courthouse
901 19th Street, Room A105
Denver, CO. 80294-3589

| AVCF | 7/12/24 | |
|---|---|---|
| FACILITY | DATE RCV'D | |
| Calnon | [illegible] | MC |
| STAFF LAST NAME | ID# | INT |
| 116759 | Ezamyza Brown | EB |
| DOC# | OFFENDER NAME | INT |