**ORIGINAL**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JAN 13 2025

JEFFREY P. COLWELL
CLERK

Civil Action No. 24-cv-00968-GPG-STV

Ezamika Brown, Plaintiff

v.

**Jury Trial requested:**
**(please check one)**
__X__ Yes ____ No

Sergeant Marquez, Defendant
Correctional Officer Juarez, Defendant
Warden Mark Fairbairn, Defendant
Captain Lorenzo Tobin, Defendant
Nurse Lisa, Defendant
Nurse Ramona, Defendant

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

# PRISONER COMPLAINT

| NOTICE |
|---|
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. |
| **Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.     PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Original form provided free of charge by CO DOC Legal Services to
Offender __Brown__ DOC# __116759__
Date __JAN 09 2025__

Ezamika Brown #116759 AVCF 12750 State Highway 96 at Lane 13 Ordway, Co. 81034
(Name, prisoner identification number, and complete mailing address)

(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____    Pretrial detainee
____    Civilly committed detainee
____    Immigration detainee
_X_    Convicted and sentenced state prisoner
____    Convicted and sentenced federal prisoner
____    Other: (*Please explain*) _____

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    Sergeant Marquez (Correctional Officer) and (Correctional Officer) Juarez
(Name, job title, and complete mailing address)

Arkansas Valley Correctional Facility (AVCF) 12750 State HWY 96 at Lane
13, Ordway, Co. 81034

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

Defendant Marquez and Defendant Juarez both were employed by the Colorado Department of Corrections as a Correctional Officer

Defendant 1 is being sued in his/her _X_ individual and/or ___ official capacity.

Defendant 2:    Warden Mark Fairbairn Captain Lorenzo Tobin
(Name, job title, and complete mailing address)

Arkansas Valley Correctional Facility (AVCF) 12750 State HWY 96 at Lane
13, Ordway, Co. 81034

Original form provided free of Charge by CO DOC Legal Services to
Offender  Brown            DOC# 116759
Date    JAN 0 9 2025

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

Defendants were both employed by Colorado Department of Corrections. Defendant Mark Fairbairn was the Warden of AVCF and Defendant Lorenzo Tobin is the Captain/Shift Commander

Defendant 2 is being sued in his/her _X_ individual and/or _X_ official capacity.

Defendant 3:   Lindsay Gouty (HSA) Health Service Administrator
                      (Name, job title, and complete mailing address)
                      Arkansas Valley Correctional Facility (AVCF) 12750 State HWY 96 at Lane 13, Ordway, Co. 81034

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

Defendant Lindsay Gouty was employed by the Colorado Department of Corrections as the Health Services Administrator at the time of the incident

Defendant 3 is being sued in his/her _X_ individual and/or _X_ official capacity.

Defendant 4:   Nurse Lisa and Nurse Ramona
                      (Name, job title, and complete mailing address)

Arkansas Valley Correctional Facility (AVCF) 12750 State HWY 96 at Lane 13, Ordway, Co. 81034

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  _X_ Yes ___ No (*check one*).  Briefly explain:

Defendants Nurse Lisa and Nurse Ramona were both employed by the Colorado Department of Corrections as Registered Nurses at AVCF

Defendant 4 is being sued in his/her _X_ individual and/or ___ official capacity.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

3

__X__   State/Local Official (42 U.S.C. § 1983)

_____   Federal Official

As to the federal official, are you seeking:

_____ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

_____ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

_____   Other: *(please identify)* _____

## D.  STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:  Defendants Marquez and Juarez callously disregarded their "gatekeeper role" and acted with deliberate indifference by preventing Mr. Brown from receiving medical treatment and denied him access to medical personnel capable of treating and evaluating his serious medical needs, an eighth amendment violation. Defendant Marquez also used excessive force by using handcuffs as a weapon solely to inflict pain and suffering, which is also an eighth amendment violation.

Claim one is asserted against these Defendant(s): Plaintiff hereby incorporates all other paragraphs of this complaint as if fully set forth herein. The actions of Defendants Marquez and Juarez as described herein, while acting under color of state law, intentionally deprived Mr. Brown of the securities, rights, privilege, liberties, and immunities secured by the Constitution of the United States of America, including his right to be free from excessive force and cruel and unusual punishment, and they were deliberately indifferent to his serious, life-threatening medical needs which is a violation as guaranteed by the Eighth Amendment of the Constitution of the United States of America.

1. Two months prior to this incident Mr. Brown had two heart surgeries (June 2-11, 2023): 1) A heart ablation, 2) a placement of an Implantable Cardioverter Defibrillator (ICD/Defibrillator)

2. On August 11, 2023 at Arkansas Valley Correctional Facility (AVCF) where Mr. Brown is housed as an inmate, was not feeling well after being shocked by the ICD/Defibrillator. Mr. Brown was having chest pains, shortness of breath, and feeling dizzy. Mr. Brown takes cardiac

medication every morning, which requires him to go to the med-line window at AVCF.

3. At the med-line window Mr. Brown spoke to both defendants (Nurse Lisa and Ramona), he told them that "he was having chest pains, short of breath, and was extremely dizzy after being shocked by his ICD.

4. Defendants Lisa and Ramona are familiar with Mr. Brown's disability caused by his heart condition and ICD/Defibrillator. On multiple occasions both defendants have taken Mr. Brown's vitals while processing him into the medical department at AVCF.

5. Nurse Lisa and Ramona responded to Mr. Brown's pleas for medical attention by sticking to AVCF/ CDOC's custom and policy of "not giving medical attention to an inmate in need because the medical emergency declaration is not declared in the proper place (the housing unit)."

6. Defendant Nurse Lisa and Ramona both disregarded the excessive risk to Mr. Brown's health and safety when they told him "to go back to his housing unit to declare a medical emergency."

7. Mr. Brown explained to Nurse Lisa and Ramona that he just had two heart surgeries, he was having heart complications, and he was shocked by his defibrillator to make them aware of the seriousness of his medical needs. Both nurses continued to tell Mr. Brown to go back to the housing unit.

8. Mr. Brown spoke to Defendant Juarez to ask for help, but Juarez also told Mr. Brown to go back to the housing unit.

9. At this point Mr. Brown was so dizzy the he needed to sit down to avoid collapsing. Defendant Juarez called his supervisor, Defendant Sergeant Marquez.

10. Once Defendant Marquez reached the med-line area she asked Mr. Brown, "what is your problem?"

11. Mr. Brown told Marquez that he was having heart complications (chest pains, short of breath, and feeling dizzy), he recently had two heart surgeries, and was shocked by his ICD/Defibrillator. He needed medical attention.

12. Defendant Marquez told Mr. Brown that he had two options: (1) go back to the housing unit and have unit staff declare a medical emergency for him or (2) go to restrictive housing (R.H.).

13. Because of the symptoms Mr. Brown was experiencing he could not physically get up and go back to the housing unit. Mr. Brown felt like he would die if he didn't get immediate medical attention.

14. Defendant Marquez made Mr. Brown roll over on the ground so she could put handcuffs on him. While Marquez put the cuffs on him, Mr. Brown felt what he believes was Marquez's knee painfully hit the side of his ribs.

Original form provided free of charge by CO DOC Legal Services to
Offender _Brown_____  DOC# 116759
Date __JAN 09 2025_____

15. While lying on the ground Mr. Brown continued to complain of chest pains and being short of breath but Defendant Marquez and Juarez treated Mr. Brown like George Floyd by ignoring his pleas for medical help.

16. Defendants Marquez and Juarez intent was to punish Mr. Brown and take him to restrictive housing.

17. Shortly after the Defendants put handcuffs on Mr. Brown, both defendants began to drag Mr. Brown to restrictive housing. Here is where Mr. Brown loss consciousness. Mr. Brown thought he was dying as his eyes were closing.

18. Available is Exhibit (A), an affidavit from inmate Larry Fuller (#54946) who witnessed the initial interaction between Mr. Brown and the CDOC Defendants Marquez and Juarez.

19. Mr. Fuller's testimony will detail how he tried to get the Defendants (Marquez and Juarez) to give Mr. Brown help.

20. Mr. Fuller is not a medical doctor, but it was clear and obvious to him that Mr. Brown was in serious need of medical care.

21. Mr. Brown told CDOC Defendants Marquez, Juarez, Nurse Lisa, and Nurse Ramona multiple times that he was having a life-threatening medical emergency.

22. All the defendants were made aware by Mr. Brown that he had two heart surgeries, that he was shocked by ICD/Defibrillator, and was having symptoms of heart complications (chest pains, short of breath, and dizziness).

23. All Defendants on August 11, 2023 disregarded the excessive risk to Mr. Brown's health and safety by not giving or getting Mr. Brown immediate medical care, which is an Eighth Amendment violation (Deliberate Indifference).

24. Upon regaining consciousness, Mr. Brown was laying on his side with his hands cuffed behind his back.

25. Defendant Captain Tobin commanded Marquez to remove the handcuffs off of Mr. Brown.

26. At first Marquez hesitated, then when she got his point, Marquez forcefully pulled at Mr. Brown's wrist.

27. Defendant Marquez begin to use excessive force by cranking the handcuffs on Mr. Brown wrist.

28. Cranking of the handcuffs is the physically grabbing the handcuffs with two hands and pulling them in an upward motion, which causes the metal and handcuff to grind deeply into and against

Original form provided free of charge by CO DOC Legal Services to
Offender _Brown_____ DOC# 116759
Date _JAN 09 2025_____

the skin and bone of the wrist.

29. The bodycam/video footage will show that Defendant Marquez used the handcuffs as a weapon, by cranking them on Mr. Brown's wrist for an unnecessary prolonged amount of time (possibly minutes).

30. At no point did any CDOC Defendant, on the scene, have the decency to stop Marquez when Mr. Brown cried out in pain. The video will show that there was no purpose to continue to twist the handcuffs on Mr. Brown's wrist and have him cry out in pain but malicious and sadistic intent.

31. Captain Tobin, the supervisor in charge, failed to discharge his duty to supervise, discipline, and train Sergeant Marquez when he allowed Marquez to continually crank the handcuffs on Mr. Brown's wrist.

32. Defendant Marquez's assault on Mr. Brown was dangerous because doctors advised Mr. Brown to avoid any extreme emotional outburst because it can induce a defibrillation shock.

33. While being assaulted in this manner Mr. Brown was still suffering from heart complications.

34. Eventually, Mr. Brown was seen by the medical department at AVCF; an EKG was done by the medical staff and Mr. Brown was taken to the hospital to get further care for his serious medical needs.

35. Mr. Brown was shocked by the ICD/Defibrillator at least four additional times after the initial shock at AVCF. Mr. Brown explains being shocked by the defibrillator is a traumatic experience. It is very painful, it can knock Mr. Brown to the ground. Mr. Brown has also experienced memory loss because of the defibrillation shocks.

36. The ICD/Defibrillator was implanted to shock Mr. Brown's heart to normal rhythm and avoid cardiac arrest.

37. Mr. Brown was taken to the hospital on August 11, 2023 and released from the hospital on August 15, 2023 four days later.

38. Defendant Marquez and Juarez callously disregarded their "gatekeeper role" and acted with deliberate indifference by preventing Mr. Brown from receiving medical treatment and denied him access to medical personnel capable of treating and evaluating his serious medical needs, an Eighth Amendment violation.

39. Mr. Brown could have also avoided the unnecessary, painful, and traumatizing defibrillation shocks if not for Defendants Marquez and Juarez's deliberate indifference to Mr. Brown's need for life-saving outside medical care.

40. Defendant Marquez also used excessive force while Mr. Brown was in need of immediate

Original form provided free of Charge by CO DOC Legal Services to
Offender _Brown_____    DOC# 116759
Date _JAN 09 2025_____

medical care by unnecessarily putting him in handcuffs, and using the handcuffs as a weapon by cranking them on Mr. Brown's wrist solely for the purpose of inflicting pain and suffering, also an Eighth Amendment violation.

41. All Defendants named were deliberately indifferent to Mr. Brown's life-threatening medical needs. Their actions were the cause for the unnecessary pain that Mr. Brown suffered and put his life in serious harm of death.

42. All of Mr. Brown's claims will be supported by viewing the bodycam/video footage that CDOC is legally mandated to record.

CLAIM TWO: Defendants Warden Mark Fairbairn and Captain Lorenzo Tobin's Failure to train, Failure to supervise, and Failure to investigate (Policies/Customs/Practices which was the driving force that caused the Constitutional violations of excessive force and deliberate indifference that Mr. Brown suffered, 8th Amendment violations

Plaintiff hereby incorporates all other paragraphs of this complaint as if fully set forth herein. At all times relevant to the allegations in complaint, Defendants Warden Mark Fairbairn and Captain Lorenzo Tobin acted or failed to act under color of state law.

43. Defendant Fairbairn and Tobin had a duty to train and supervise the Correctional Officers and Medical Staff to ensure the safety and wellbeing of prisoners such as Plaintiff confined at AVCF.

44. Defendants Fairbairn and Tobin failed to discharge this duty in several respects which both caused the constitutional violations experienced by Plaintiff and exacerbated the extent of the physical and psychological injuries he suffered therefrom.

45. Defendants Fairbairn and Tobin acted intentionally in failing to adequately train and supervise Correctional Officers and Medical Staff, particularly with regards to deliberate indifference toward Plaintiff's serious medical needs, Defendants conduct was motivated by reckless and callous indifference to the federally protected rights of inmates in their custody.

46. Defendant Warden Fairbairn was responsible for the creation of customs, policies, and practices at AVCF regarding when it is appropriate to use handcuffs/restraints, use of force on an inmate, and how/what to do when an inmate is suffering from a sufficiently serious (potentially life-threatening) medical emergency.

47. Defendant Captain Tobin was also responsible for the implementation and supervision of the use of those actions, customs, policies, and practices at AVCF.

48. Defendants Fairbairn and Tobin implemented training and policies that led to Correctional Officers such as Marquez and Juarez, who can be seen on video handcuffing and cranking them on the Plaintiff's wrist while he was having a medical emergency.

49. AVCF is a medical facility.

Original form provided free of Charge by CO DOC Legal Services to
Offender  Brown                      DOC# 116759
Date    JAN 09 2025

50. Unlike other facilities in CDOC, AVCF, houses inmates with sufficiently serious medical issues.

51. Mr. Brown is currently unable to be housed at certain facilities because of the severity of his heart condition.

52. Defendants Fairbairn and Tobin are fully aware that there are inmates who have sufficiently serious (potentially life-threatening) medical needs in their care.

53. Despite this knowledge, Defendants Fairbairn, Tobin, and CDOC have not implemented a training procedure or policy that protects inmates with life-threatening medical issues as Mr. Brown.

54. Just as Medical Personnel at AVCF need to be properly trained in the procedures set forth in Colorado Department of Corrections Clinical Standards and Procedures for Health Care Providers: (e.g., "Acute cardiac disease is the greatest single, potentially correctable, cause of death within the department's population and therefore, patients *must* [emphasis added] be carefully screened to prevent missing a diagnosis." (quoting Mata v, Saiz, 427 F. 3d 745 (10th Cir. 2005)). Correctional Officers need the same training to ensure the health and safety of inmates in their care.

55. It was highly predictable that a system, policy or training for Correctional Officers at AVCF was needed, specific to handling inmate(s) with sufficiently serious (potentially life-threatening) medical needs. If Defendants Fairbairn and Tobin had not failed their duties by not properly training their subordinates in this respect, Mr. Brown's serious medical needs would not have been disregarded by Defendants Marquez, Juarez, Nurse Lisa, and Nurse Ramona and they would have gotten Mr. Brown the serious medical care that he needed.

56. Defendants Fairbairn and Tobin actions or inaction were the driving force that caused the constitutional violation of deliberately indifference to Mr. Brown's serious (potentially life-threatening) medical needs, an Eighth Amendment violation.

(Failure to supervise and investigate Employees' known patterns of escalating threats and harassment against plaintiff):

57. By official CDOC policy, handcuffs and restraints are not to be used on compliant inmates. There is no policy that is specific to Correctional Officers needing to assess and/or how to handle an inmate who is having a serious (potentially life-threatening) medical emergency.

58. Defendants, Marquez and Juarez, they did in fact cause Mr. Brown tremendous and substantial pain, and he can be observed on one of the videos, crying out in response to the infliction of needless pain. This cruel and unusual punishment in violation of plaintiff no bystander officer stopped Marquez or attempted to intervene. This is because the use of handcuffs and cranking them solely to inflict pain on disliked, compliant inmates at AVCF was common

Original form provided free of Charge by CO DOC Legal Services to
Offender  Brown
DOC# 116759
Date  JAN 09 2025

policy and practice. Solely by virtue of Defendants Fairbairn and Tobin's promulgation of this
policy and practice, and their failure to properly train and supervise nearly all the staff of how to
handle situations dealing with an inmate who is having a serious life-threatening medical
emergency at AVCF Defendants Fairbairn and Tobin included-were deliberately indifferent to
the inmates' constitutional rights to not be subjected to needles pains and excessive force as well as
the substantial risk that such deliberate indifference would in fact cause regular constitutional
violations involving the infliction of needless pain and excessive uses of force. This custom and
the training provided (or not provided) thereon by Defendants Fairbairn and Tobin was thus
naturally a driving force behind the additional needless pain and suffering Plaintiff was force to
endure after the Plaintiff declared a medical emergency for his serious life-threatening medical
needs. This sort of training provided by Defendants Fairbairn and Tobin (and possibly the CDOC
itself) was also a moving force behind, and foreseeable cause of, the constitutional violations and
injuries suffered.

59. Defendants Fairbairn and Tobin were each personally aware that Defendant Marquez had, a
propensity to harass and threatened inmates at AVCF. (See: Ward v. Marquez, 2022 Dist. Lexis
246521).

60. Defendants Fairbairn and Tobin were also each personally aware that Defendant Marquez had
a reputation for being a "snap case" Officer quick to anger and disturbingly eager to initiate and
participate in use of force and harassment against inmates.

61. Despite this knowledge, Defendants Fairbairn and Tobin tasked Defendant Marquez with
unmonitored interaction with the Plaintiff while he was having a life-threatening medical
emergency.

62. After Mr. Brown was released from the hospital, C/O Mrs. Miller expressed that she had seen
Mr. Brown in front of the med-line window on August 11th, 2023 and she "knew that it was going
to be a bad situation for him, because Marquez was involved."

63. AVCF has a culture among Correctional Officers that encourages them to turn the other cheek
instead of intervening with a coworkers actions, even if, their actions are Constitutional Violations
of inmates rights.

64. This is why not one Correctional Officer, Defendant Captain Tobin included, at the scene of
Marquez violating Mr. Brown's rights did not have the decency to stop her when Mr. Brown can
be seen on video footage crying out in pain.

65. Defendants Fairbairn and Tobin did this with deliberate indifference to Plaintiff's
Constitutional Rights, and reckless disregard for the harm that would likely result to Plaintiff if
Defendant Marquez was unmonitored.

66. Had Defendants Fairbairn and Tobin properly executed their duties to supervise their
employees and investigate known complaints of escalating threats/harassment by their employees
and known patterns indicating a dangerous proclivity for uses of force and deliberate indifference
by their employees, the attack and Constitutional Violations to Plaintiff's serious medical needs

Original form provided free of charge by CO DOC Legal Services to
Offender Brown                                   DOC# 116759
Date JAN 09 2025

never would have happened.

67. Defendants Fairbairn and Tobin's failure to supervise, discipline, and investigate continues to put inmates and staff's safety in danger due to Marquez's allowed misconduct. Since Brown's first complaint has been filed Marquez has been "so out of control" and unsupervised that on June 13th, 2024 in the officers' roll-call at AVCF, Marquez physically assaulted one of her coworkers. This assault and the Constitutional Violations that Brown suffered are the result of Fairbairn and Tobin's continued failures described in this complaint.

68. Defendants Fairbairn, Tobin, and CDOC have created policies, customs, and practices that reward the actions set forth in this complain by promoting Fairbairn, Tobin, and Marquez is/was in consideration for promotion, which sends the message to other Officers that if they want to advance in their careers faster that reckless disregard, deliberate indifference, and violating the Constitutional Rights of Prisoners will help them advance. It is rightly interpreted by Correctional Officers at AVCF that the aforementioned behavior is encouraged.

69. If Defendants Fairbairn and Tobin properly investigated numerous filed grievances informing them of repeated harassment and Constitutional Violating behavior by Defendant Marquez and other Correctional Officers the assault on Mr. Brown and the violation of his rights would not have happened.

70. Defendants Fairbairn and Tobin knowingly and willfully ignored all of these indicators of impeding harm to Mr. Brown and inmates in their care. For these reasons set forth, Defendant Fairbairn and Tobin were both deliberately indifferent to Mr. Brown's serious medical needs by failing to train, supervise, and investigate their employees.

71. Defendants Fairbairn and Tobin also have created policies, a culture, and customs that were a driving force which was the cause for the Constitution Violations of Mr. Brown's Rights.

CLAIM THREE:  Health Services Administrator (HSA) Lindsay Gouty's Failure to Train, Failure to Supervise, Failure to Investigate, Policies/ Customs /Practices causing Constitutional Violations   ·

Plaintiff hereby incorporates all other paragraphs of this complaint as if fully set forth herein. At all times relevant to the allegations in complain, Defendant Gouty acted or failed to act under color of state law.

72. Defendant Gouty had a duty to train and supervise Medical Staff to ensure the safety and medical well-being of prisoners as well as Plaintiff confined at AVCF.

73. Defendant Gouty failed to discharge this duty in several respects which caused the Constitutional Violations experienced by Plaintiff and exacerbated the extent of the physical and psychological injuries he suffered therefrom.

74. Defendant Gouty acted intentionally in failing to adequately train and supervise Medical Staff,

Original form provided free of Charge by CO DOC Legal Services to
Offender Brown                     DOC# 116759
Date  JAN 0 9 2025

particularly with regards to deliberate indifference towards Plaintiff's life-threatening medical needs, and failure thereafter to provide critical medical care to Plaintiff.

75. Defendant Gouty's conduct was motivated by reckless and callous indifference to the federally protected rights of inmates in her care.

76. Defendant Gouty was responsible for the creation of customs, policies, and practices at AVCF Medical Department, regarding *when it is appropriate to give medical attention to an inmate.*

77. Defendant Gouty was also responsible for implementation and supervision of *when denying medical attention to a patient is appropriate.*

78. By official CDOC policy, (Colorado Department of Corrections Clinical Standards and Procedures for Health Care Providers and well-established standards of Nursing Care): "Acute cardiac disease is the greatest single, potentially correctable, cause of death within the department's population and therefore, patients *must* [emphasis added] be carefully screened to prevent missing a diagnosis." (quoting Mata v, Saiz, 427 F. 3d 745 (10th Cir. 2005)).

79. Defendant Gouty failed to properly train and supervise Defendants Nurse Lisa, Nurse Ramona, and her subordinates Medical Staff of "*when* it is a *must* that patients be carefully screened to prevent missing a diagnosis."

80. Mr. Brown suffered a defibrillation shock on the morning of August 11th, 2023. Diagnosing the purpose for the shock is time-sensitive for the patient's survival.

81. Defendant Gouty's failure to properly train and supervise Nurse Lisa and Nurse Ramona caused both of them to tell Mr. Brown to go back to the housing unit, instead of give him the immediate medical attention that he needed.

82. This was an unnecessary delay in Mr. Brown's need for outside follow-up testing to assess and treat Mr. Brown's heart condition, it was basic medical treatment Plaintiff required.

83. Defendant Gouty's actions were deliberately indifferent to Mr. Brown's known life-threatening medical needs.

84. Defendant Gouty's deliberate indifference did in fact cause him tremendous and substantial pain when Defendants Nurse Lisa and Ramona under Gouty's authority denied Mr. Brown medical treatment for his life-threatening medical needs at the med-line window.

85. Mr. Brown suffered at least four additional defibrillation shocks because of Defendant Gouty's failure to train Nurse Lisa and Ramona to screen Mr. Brown when he came to the med-line window asking for medical care while experiencing chest pains after the initial defibrillation shock, as CDOC Clinical Standards and Procedures for Healthcare Providers requires.

86. Defendant Gouty's dereliction of duty was also the cause for the delay in Mr. Brown's outside

Original form provided free of Charge by CO DOC Legal Services to
Offender  Brown                    DOC# 116759
Date   JAN 0 9 2025

medical care. The custom of neglecting their "gatekeeper role," was rightfully interpreted by Gouty's subordinates to be normal conduct allowed at AVCF's medical department by Defendant Gouty. Defendant Gouty's deliberate indifference continues to subject all of the inmates in her care to an Eighth Amendment Violation (even after her departure from AVCF).

CLAIM FOUR:  Defendants Nurse Lisa and Nurse Ramona callously refused to fulfill their "gatekeeper role" and acted with deliberate indifference by preventing Mr. Brown from receiving medical treatment and denied him access to medical personnel capable of treating and evaluating his serious medical needs, an Eighth Amendment violation.

Plaintiff hereby incorporates all other paragraphs of this complaint as if fully set forth herein. The actions of Defendants as described herein, while acting under color of state law, intentionally deprived Plaintiff Ezamika Brown of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, included his rights to be free from deliberate indifference to his serious medical needs and freedom from cruel and unusual punishment as guaranteed by the Eighth Amendment of the Constitution of the United States.

87. At all times relevant to the allegations in this complaint, Defendants Nurse Lisa and Ramona knew of Mr. Brown's life-threatening heart condition, the fact that Plaintiff had most certainly sustained chest pains and a defibrillation shock and that he needed outside medical follow-up testing to assess and treat Mr. Brown's heart condition was basic medical treatment plaintiff required.

88. By official CDOC policy, (Colorado Department of Corrections Clinical Standards and Procedures for Health Care Providers): "Acute cardiac disease is the greatest single, potentially correctable, cause of death within the Department's population and therefore, patients *must* [emphasis added] be carefully screened to prevent missing a diagnosis." (quoting Mata v, Saiz, 427 F. 3d 745 (10th Cir. 2005)).

89. Nevertheless, and with deliberate indifference to Mr. Brown's Constitutional Rights to receive necessary medical care, protected under the Eighth Amendment, Defendants Nurse Lisa and Ramona failed to examine, treat, and care for Mr. Brown's severe life threatening heart condition, placing Mr. Brown at risk of substantial additional physical harm as well as risk to heart damage and death.

90. Deliberate indifference to these serious medical needs did in fact cause Plaintiff to suffer multiple unnecessary shocks from ICD/Defibrillator, which is in place to keep the Plaintiff alive. The defibrillation shocks are traumatizing for Mr. Brown.  The shocks can be compared to being kicked square in the chest by a horse. Mr. Brown explains that for him, a defibrillation shock is like "his life stops and flashes before his eyes."

91. Defendants Nurse Lisa and Ramona willful disregard to Mr. Brown's serious medical needs is a violation of their "gatekeeper role" as medical officials, an Eighth Amendment violation. Mr. Brown needed the Defendants medical assistance at the med-line window on August 11th, 2023 at AVCF. Mr. Brown was forced to endure 4 or 5 (Mr. Brown does not remember/memory loss) avoidable defibrillation shocks, because Nurse Lisa and Ramona were deliberately indifferent and

Original form provided free of Charge by CO DOC Legal Services to
Offender  Brown                      DOC#  116759
Date    JAN 09 2025

caused unnecessary delay for his medical needs.

92. Mr. Brown complained of having chest pains, shortness of breath, and he was feeling dizzy after a defibrillation shock. Defendants Nurse Lisa and Ramona both violated Mr. Brown's Eighth Amendment Rights to medical care by opting to follow AVCF/CDOC's defective policies and customs "to send a patient back to the housing unit when they are having a medical emergency." This policy continues to be implemented and is violating the Constitutional Rights of inmates in their care daily.

93. Defendants Nurse Lisa and Ramona had a duty to follow medical protocol that requires referral of minimal diagnostic testing to confirm the symptoms, but instead they refused Mr. Brown medical treatment. This was a violation of Mr. Brown's Eighth Amendment Constitutional Rights.

Original form provided free of Charge by CO DOC Legal Services to
Offender  Brown                           DOC#  116759
Date   JAN 09 2025

## E.     PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?     ___ Yes  _X_  No (*check one*).

*If your answer is "Yes," complete this section of the form.  If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit.  Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):     _____

Docket number and court:     _____

Claims raised:     _____

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)     _____

Reasons for dismissal, if dismissed:     _____

Result on appeal, if appealed:     _____


## F.     ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions.  See 42 U.S.C. § 1997e(a).  Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

          _X_  Yes ___ No (*check one*)

Did you exhaust administrative remedies?

          _X_  Yes ___ No (*check one*)

Original form provided free of charge by CO DOC Legal Services to
Offender  Brown                          DOC#  116759
Date     JAN 0 9 2025

## G.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

Wherefore, Plaintiff Mr. Brown respectfully request that this court enter judgment in his favor and against the Defendants and grant:

a.   Appropriate declaratory relief;

b.   Compensatory and consequential damages, including damages for physical harm, physical injuries, psychological trauma, defibrillation shocks, emotional distress, anxiety, depression, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

c.   Monetary damages for all economic and noneconomic loss on all claims as allowed by law in an amount to be determined at trial;

d.   Punitive damages on all claims allowed by law and in an amount to be determined at trial;

e.   Attorney's fees and cost associated with this action on all claims allowed by law;

f.   Pre and post judgment interest at the lawful rates; and

g.   Any further relief that this court deems just and proper, and any other relief as allowed by law.

Original form provided free of Charge by CO DOC Legal Services to
Offender __Brown_____  DOC# 116759
Date ___JAN 0 9 2025_____

## H.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

(Plaintiff's signature)

(Date)

(Revised November 2022)

Original form provided free of charge by CO DOC Legal Services to
Offender _Brown_    DOC# 116759
Date   JAN 0 9 2025

Sworn Statement by Larry Fuller #54946

EXHIBIT (A)                                    Originally written on:
                                               Oct-01-2023

On August 11th 2023 about 7;25 A.M.-7;30A.M. I went through Arkansas Valley
Correctional Facility's Med line and waited for my OCA client still attending
Med line. I noticed inmate Ezamika Brown #116759 sitting on the side walk against
the wall right in front of the Med Line In and Out doors. He was a little dis-
tressed. I bent down some asking him if he was OK. He shook his head no slightly,
replying naw, my hearts messing up, having heart pains, just had those two heart
surgeries. I said "Ill let them know'. He said "he already did, they told him to
go back, but he can't, that his hearts in pain'. I looked around for help, seeing
Ms. Sgt. Marquez approach, I said he's having heart pains. She saidyeah, and ask-
ed inmate Brown, "whats going on, what did medical say? Mr. Brown was unresponsive,
as to which Ms. Marquez said "you don't want to tell me, did they say go back?
Huh?" Mr. Brown did'nt respond. Ms. Marquez, then said, "OK I'll ask them'. She
came back out saying they said, "go back', So go back now, or I'm writing you up.
I'm telling you, you got to go back, last chance'. "Okay stand up, cuff up". "Fuller
(me) move over there'. I rolled my client's wheel chair to the west of the Med
lines exit door, turning around facing her, seeing Mr. Brown still unresponsive;
As she called the Med line Officer over to assist. I then seen Mr. Brown faint-
ing and slumping down to the East on the sidewalk and wall. Ms. Marquez then said
"Oh now were gonna play this', rolling him flat face down andcuffing him up behind
his back with the Med line Officer's assistance. Then they grabbed each of his
arms pulling his limp body up. Ms. Marquez saying "come on get up, walk'. Mr.
Brown was still limp and unresponsive. Just then my client came out (Michael
Byrrum) from Med line saying "whats up,whats the matter with him? I said hearts
messing up. He said "why they cuffing him up then?" I said sarcastically, thats
what you get when you have heart problems, I guess'. Seeing Ms.Marquez and the
other Officer giving up pulling him up.She said "put him down" shaking her head.
The Med line officer let go. Then Ms. Marquez let his other arm go, letting
his limp body slide and fall with his shoulder and head going down on the wall
and side walk crack, as she Ms. Marquez called on her radio for Officer back up.
As I turned rolling away then turning North seeing other officers arriving and
Mr. Brown still down on the side walk cuffed. Then I proceeded back to unit 2.
This Affidavit done this 7th day of 2025.        Signed: _Larry Fuller_
                                                    Larry Fuller

                    Page 1. of 2.

## AFFIDAVIT

) State
) OF
) Colorado

I Larry Fuller # 54946 Do hearby swear Under Penality Of Perjury under the
Laws of the United States Of America that the previous page 1. of 2. Sworn
Statement by Larry Fuller #54946 originally written on Oct-01 2023 and typed
on this 7th day of 2025 is True and Correct:
See:28 U.S.C. §1746, 18 U.S.C. §1621

Signed: _Larry Fuller_
Larry Fuller

Page 2. of 2.

US POSTAGE

quadient
FIRST-CLASS MAIL
$002.87 Q
01/10/2025 ZIP 81034
043M31221656

Colorado Department of Corrections
Name E-dward Blevin
Register # 116 717
Unit L2 311
Address 12750 Hwy 96 at Lane 13
City/State/Zip Ordway, CO 81034

Clerk of the Court
United States District Court of Colorado
901 19th Street, Room A105
Denver, CO. 80294-3589

